14-4028-ag
*NLRB v. Sprain Brook Manor Nursing Home, LLC*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of November, two thousand and fifteen.

Present:
> PETER W. HALL,
> RAYMOND J. LOHIER, JR.,
> > *Circuit Judges*,
> CHRISTINA REISS,
> > *District Judge*.[*]

_____

NATIONAL LABOR RELATIONS BOARD,

> *Petitioner*,

v.                                                                   No. 14-4028-ag

SPRAIN BROOK MANOR NURSING HOME, LLC,

> *Respondent*,

_____

For Petitioner:               USHA DHEENAN, Supervisory Attorney, National Labor Relations Board, Washington, D.C.

For Respondent:               JEFFERY A. MEYER & DAVID A. TAUSTER Kaufman Dolowich & Voluck LLP, Woodbury, NY

_____

[*] Chief Judge Christina Reiss, of the United States District Court for the District of Vermont, siting by designation.

Petition for enforcement of an order of the National Labor Relations Board.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for enforcement is **GRANTED**.

Petitioner the National Labor Relations Board ("the Board") petitions for enforcement of its decision and order finding violations of the National Labor Relations Act ("the Act") by Respondent Sprain Brook Manor Nursing Home, LLC ("Sprain") against its employees. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues before the court.

For the most part, the parties do not question the Board's application of the law; they disagree only about the relative weight of various pieces of evidence that underlie the Board's conclusions. This court will affirm the conclusions of the Board if supported by substantial evidence. 29 U.S.C. § 160(e); *see also Abbey's Transp. Servs., Inc. v. NLRB*, 837 F.2d 575, 579 (2d Cir. 1988). "Where competing inferences exist, we defer to the conclusions of the Board." *Abbey's Transp.*, 837 F.2d at 582; *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). Ultimately, the reviewing court must set aside the Board's decision if, in viewing the record as a whole, it is "left with the impression that no rational trier of fact could reach the conclusion drawn by the Board." *NLRB v. G & T Terminal Packaging Co.*, 246 F.3d 103, 114 (2d Cir. 2001). There is no basis for doing so here.

The Board found that various interactions between Sprain's administrator, Michael Reingold, and Sprain employees, namely Catherine Alonso and Karen Bartko, constituted violations of Sections 8(a)(1) and 8(a)(3) of the Act. The Board also found that several policy changes implemented by Sprain violated Section 8(a)(5) of the Act. We consider each set of

2

findings in turn.

An employer violates Section 8(a)(1) when it "interfere[s] with, restrain[s], or coerce[s], employees in the exercise of the rights guaranteed in [S]ection [7]." 29 U.S.C. § 158(a)(1). Section 7 of the Act guarantees employees the right to "form, join or assist labor organizations" and engage in other activities related to collective bargaining. 29 U.S.C. § 157. Where an employer acts against an employee who is engaged in protected Section 7 activity, the employer's actions violate Section 8(a)(1) if they would have "a reasonable tendency to coerce or intimidate employees, regardless of whether they are actually coerced." *N.Y. Univ. Med. Ctr. v. NLRB*, 156 F.3d 405, 410 (2d Cir. 1998).

An employer violates Section 8(a)(3) of the Act by disciplining or discharging an employee for engaging in Section 7 union activity. *See* 29 U.S.C. § 158(a)(3); *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 397-98 (1983), *abrogated on other grounds by Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Greenwich Collieries*, 512 U.S. 267 (1994). Such actions also derivatively violate Section 8(a)(1) because antiunion-motivated discipline or discharge necessarily discourages union membership or activities. *See Office & Prof'l Emps. Int'l Union v. NLRB*, 981 F.2d 76, 81 n.4 (2d Cir. 1992). The test for a Section 8(a)(3) violation involves a two-step burden-shifting framework, as articulated in *Wright Line*, 251 NLRB 1083 (1980). *See Transp. Mgmt. Corp.*, 462 U.S. at 403 (approving *Wright Line* test); *NLRB v. S.E. Nichols, Inc.*, 862 F.2d 952, 957 (2d Cir. 1988) (applying *Wright Line* test). The Board's General Counsel first has the burden to show that the employer (1) had knowledge that employees were engaged in protected union activity and (2) that the employer's decision to discipline or discharge those employees was motivated, at least in substantial part, by hostility toward that union activity. *See Abbey's Transp.*, 837 F.2d at 579. Once the General Counsel

3

makes that showing, the burden shifts to the employer to demonstrate, by a preponderance of the evidence, that it would have taken the same action absent the protected union activity. *See S.E. Nichols*, 862 F.2d at 957.

The Board concluded that Sprain violated Section 8(a)(1) of the Act when Reingold threatened Alonso in response to her asking to leave the room during her discharge meeting in order to get union delegate Clarisse Nogueira. As a threshold matter, seeking to have a union representative present for an important meeting with one's supervisor, as Alonso did here, is protected Section 7 activity. *See NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 260 (1975). While the exact nature of Reingold's threats that Alonso would have "trouble" and would "get nothing" were unclear on this record, it is objectively reasonable for Alonso to have believed that the threatened consequences were serious and negative and thus sufficiently coercive to violate Section 8(a)(1). *See NLRB v. Brookwood Furniture*, 701 F.2d 452, 460 (5th Cir. 1983) (in the context of noticeable, ongoing antiunion animus, supervisor violated Section 8(a)(1) by saying to employee that he was "afraid" employee would "get into trouble" because of employee's union support); *Parkview Hospital, Inc.*, 343 NLRB 76, 81 (2004) (employer threatening employee with "trouble" for union activity violated Section 8(a)(1)).

Sprain Brook challenges this conclusion of the Board only by attacking Alonso's credibility. We will not disturb the Administrative Law Judge's ("ALJ") credibility determinations, however, unless they are "hopelessly incredible or the findings flatly contradict either the law of nature or undisputed documentary testimony." *NLRB v. Thalbo Corp.*, 171 F.3d 102, 112 (2d Cir. 1999) (quotation marks omitted); *see also NLRB v. Dinion Coil Co.*, 201 F.2d 484, 487 (2d Cir. 1952). Although the ALJ acknowledged that Alonso's testimony was convoluted and contradictory at times, the ALJ ultimately found her to be candid and reliable and

4

credited most of her testimony. Alonso's testimony was not only corroborated by Nogueira's testimony, it was not rebutted by Sprain because Reingold, who presumably could have countered Alonso's recitation of Reingold's threats, did not testify.

Substantial evidence also supports the Board's conclusion that Reingold's discharge of Alonso violated Sections 8(a)(3) and 8(a)(1). Sprain knew of Alonso's union activity because it had been paying Alonso monthly backpay for having illegally fired her for her union affiliation in 2005. Sprain admits, moreover, that Reingold sat in with Alonso at initial union-forming negotiations within months prior to her discharge. Her union activity was not stale, as Sprain contends. *See Am. Thread Co. v. NLRB*, 631 F.2d 316, 318, 322-23 (4th Cir. 1980) (discharge unlawful even though last union activity was eight months before discharge). Given Nogueira's unrebutted testimony that Reingold told her and Alonso that employees did not deserve union representation, there was substantial evidence that Sprain's employment decision was motivated by hostility to the union. Moreover, although Sprain argues that Alonso's discharge was based on poor job performance, it presented no evidence to show that Reingold relied upon, or even knew about, Alonso's past disciplinary write-ups, which were issued several years prior to the events in question during Alonso's first months of employment. Alonso and Nogueira's testimony constituted substantial evidence of the violation.

With respect to Bartko, Sprain does not contest that the Board's General Counsel met his initial *Wright Line* burden. Sprain's attempts at showing an independent reason for taking action against Bartko fall short. The door-slamming incident, which Sprain claims is the real reason Bartko was discharged, was reasonably interpreted by the Board as pretextual. There is evidence that the doors to the facility could not slam because of built-in bars, and Bartko was a 15-year employee with no disciplinary record. In addition, Sprain contends that Barkto's response to

5

Reingold suspending her—telling him she would not hold the door for him and that he should go home—and the fact that she showed up for work the next day after being told to go home, were insubordinate. The cases that Sprain cites as precedent, however, involve significantly more egregious behavior. *E.g.*, *NLRB v. Starbucks Corp.*, 679 F.3d 70, 78-80 (2d Cir. 2012) (employee's use of profanities in front of customers may have resulted in loss of the Act's protection). The record supports the Board's finding that Sprain's proffered reasons for discharging Bartko were pretextual. *See Vincent Indus. Plastic, Inc. v. NLRB*, 209 F.3d 727, 736 (D.C. Cir. 2000).

The Board's conclusions that Sprain committed four violations of Section 8(a)(5) of the Act by unilaterally rescinding or altering employee benefits also are supported by substantial evidence. Sections 8(a)(5) and 8(d) require employers to "bargain collectively with the representatives of [its] employees" with respect to "wages, hours, and other terms and conditions of employment." 29 U.S.C. §§ 158(a)(5), 158(d). An employer violates that section by announcing and altering such conditions of employment without giving the union prior notice and the opportunity to bargain over the change. *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 198 (1991); *NLRB v. Katz*, 369 U.S. 736, 743 (1962).

Sprain does not dispute that the four rescinded benefits—free hot lunches, on-site check-cashing during work hours, free on-site physicals and tuberculosis testing, and medical-expense payouts—are mandatory subjects of bargaining. Sprain also does not contest that, for each benefit, it issued to its employees a written notice warning them that the benefit would no longer be available. Notwithstanding these notices to employees, Sprain never sent any of the notices to the union. Sprain's behavior thus denied the union any opportunity to bargain over these changes, in violation of Section 8(a)(5). *See NLRB v. WPIX, Inc.*, 906 F.2d 898, 901 (2d Cir.

1990) (noting that ignoring the union and taking unilateral action "detracts from the legitimacy of the collective bargaining process by impairing the union's ability to function effectively, and by giving the impression to members that a union is powerless." (quotation omitted)).

With regard to check-cashing in particular, Sprain argues that it had no contractual relationship with the third-party check-cashing company and no control over that company's decision to cease the service. This contention is irrelevant. Sprain does not dispute that it previously allowed its employees to cash their checks during work hours or that this was a benefit mandatorily subject to bargaining. By focusing exclusively on the fact that it did not unilaterally cease this service, Sprain abandoned the argument that it had no obligation to notify the union of a change to the service. The Board's conclusion that Sprain's failure to notify the union of this change violated Section 8(a)(5) must stand.

We have considered all of Sprain's remaining arguments and find them to be without merit. The petition for enforcement is **GRANTED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk